IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

HOME CITY GRAIN, INC., )
)
*Plaintiff*, )
)
vs. )   Case No. 23-CV-1092
)
CONTINENTAL WESTERN INSURANCE )
COMPANY, )
)
*Defendant*. )
)

## COMPLAINT

Plaintiff, Home City Grain, Inc. (Home City), for its clams against the defendant, Continental Western Insurance Company (Continental), alleges:

1. Home City is a for-profit corporation with its principal place of business at 208 2nd St., Home, Kansas 66438.

2. Continental is an insurance company with its principal place of business in Urbandale, Iowa. Continental is authorized to transact business in Kansas and may be served with process through the Kansas Commissioner of Insurance.

3. This Court has jurisdiction over the parties and subject-matter of this lawsuit. There is complete diversity of citizenship and the amount in controversy exceeds $75,000. This court has jurisdiction pursuant to 28 U.S.C. 1332.

4. Among other things, Home City buys, stores, and sells grain at its locations in Wakefield and Home, Kansas.

5. On April 1, 2021, Home City renewed its commercial insurance policy with Continental, Policy No. 3219011-22 (the Policy), for a 12-month term.

6. Subject to exclusions that do not apply, the Policy covers "risks of direct physical loss to covered property."

7. Among other things, the Policy covered Home City's risk of loss for:

   a. Stock, including "grain, seed, and other agricultural products";

   b. Consequential loss, including "the loss of value of an undamaged part or parts of a stock which becomes unmarketable . . . due to a physical loss to another part or parts of the stock caused by a covered peril";

   c. "Earnings," including "actual loss of net income . . . that would have been earned or incurred, had there been no direct physical loss or damage to property caused by or resulting from a covered peril," as well as "continuing operating expenses normally incurred by [Home City's] business, including but not limited to payroll expense"; and

   d. Extra Expense, including expenses "to avoid or reduce the interruption of business and continue operating at a 'covered location.'"

8. At its Wakefield location, Home City has a concrete structure, seven steel structures, and a grain bunker to store grain.

9. Beginning October 12, 2021, Home City's grain bunker was filled with more than 207,000 bushels of corn that it had purchased and secured with a tarp.

10. Home City inspected the corn upon delivery for its moisture content and recorded that the content fell within its expected parameters for fully marketable corn.

11. Before Home City secured the corn in the grain bunker with the tarp, Home City inspected the tarp to make sure it did not have any holes or tears.

12. From the time Home City received the corn through April 29, 2022, it conducted routine inspections, either weekly or bi-weekly, to test the corn's temperature and moisture content.

13. Home City's policy is to record its routine inspections only if the corn's moisture content rises above a percentage of 16 to 16.5 or if its temperature is less than 10 degrees cooler than the external temperature.

14. Home City conducted weekly or bi-weekly inspections of the corn in the grain bunker, but neither its moisture content nor its temperature rose above those parameters.

15. When Home City acquired its Wakefield location in September 2021, Home City installed larger aeration pipes in the grain bunker with fans to assist with air flow and covered the base of the grain bunker with agricultural lime.

16. On December 15, 2021, a windstorm swept through Wakefield, Kansas that brought wind gusts up to 85 and 94 miles per hour and rain up to .3 inches.

17. The windstorm ripped the northern half to two-thirds of the tarp in many places and threatened to blow the tarp off the grain bunker entirely.

18. The next day, Home City's president, Brian Wullschleger, called Continental's adjuster, Jeff Hanig, to discuss the incident and initiate a claim. Mr. Wullschleger also sent Mr. Hanig photographs of the damage to the tarp.

19. Also on December 16, 2021, Home City received a bid from Flint Hills Grain, LLC (Flint Hills), to purchase 200,000 bushels of corn from its grain bunker. Home City

accepted the bid on December 17, with a scheduled delivery date between April 1 and May 31, 2022.

20. On December 17, 2021, Home City sewed the rips and tears in the tarp back together.

21. On December 28, 2021, Mr. Hanig came to Home City's Wakefield location to inspect the damage from the windstorm, including the grain bunker and the tarp.

22. The same day, and on multiple other occasions, Home City's representatives asked Continental's adjuster, Mr. Hanig, if Home City should make arrangements to remove the corn from the pile for the potential of spoiled corn. Mr. Hanig responded "No" that Continental "would take care of anything that happened later when we moved the pile in April or May."

23. Home City followed Mr. Hanig's instructions and kept the grain in the bunker because Home City had initiated a claim over the windstorm damage with Continental and intended to follow Continental's instructions on how to proceed.

24. Home City continued to routinely inspect the corn's moisture content and temperature after the windstorm but did not identify any measurements that fell outside of their expected parameters.

25. On April 29, 2022, another severe storm hit Home City's Wakefield location that blew the tarp off of the grain bunker and caused rain to fall on the corn.

26. On May 9, 2022, Flint Hills arrived at Home City's Wakefield location to begin moving the corn out of Home City's grain bunker, beginning on the south side of the bunker. For the first eight days that Flint Hills was moving corn out of the bunker, none of the corn showed signs of damage.

27. On May 18, 2022, as Flint Hills moved further north through the bunker, Home City started to see some damaged corn in the pile, which was at the location of the tarp damaged in the December 15, 2021, windstorm.

28. Home City called Mr. Hanig to discuss the damaged corn but Mr. Hanig did not answer.

29. On May 23, 2022, Flint Hills started rejecting loads of corn from the pile for its damage and smell.

30. The next day, Mr. Wullschleger contacted Mr. Hanig to discuss the damage. Together, Mr. Wullschleger and Mr. Hanig decided to move the remaining corn into Home City's steel bins to dry out and look for salvage markets that might purchase the corn.

31. Home City finished moving the corn out of the bunker on June 16, 2022.

32. Home City found another buyer for the damaged corn that offered either: (1) a flat .65 cents per bushel; or (2) for Home City to take its chances on the docked price as the buyer received and inspected the corn on a per-load basis. Mr. Hanig directed Home City to accept the per-load option.

33. Home City fully cooperated with Continental related to the investigation and adjustment of its claim. It provided extensive documentation of the loss. Upon Continental's request, it provided its president, Brian Wullschleger, for an Examination Under Oath, where all circumstances related to the claim were disclosed and documented. Finally, Continental required a Proof of Loss. That Proof of Loss was submitted on March 22, 2023, and it's attached as Exhibit A to this Complaint.

34. By letter on April 20, 2023, Continental denied, without just cause or excuse, Home City's claim for damages related to the December 15, 2021 windstorm, including lost revenue from the windstorm and additional, necessary costs and expenses Home City incurred from the loss.

35. Home City Grain is entitled to recover damages totaling $648,274.63 pursuant to its Policy with Continental.

### Count I: Breach of Contract

36. Home City incorporates the preceding allegations in this count.

37. The Policy is an insurance contract between Home City and Continental to insure the risk of Home City's losses, including the risk of loss to Home City's corn and associated losses.

38. Continental's denial of Home City's claim breaches its contract.

39. As a result of Continental's denial, Home City has suffered the damages identified.

### Count II: Attorney Fees under K.S.A. 40-201

40. Home City incorporates the allegations of the preceding paragraphs in this count.

41. Continental is an "insurance company," as that term is defined in K.S.A. 40-201.

42. Continental has refused without just cause to pay the full amount of Home City's loss under the Policy.

43. Home City is entitled to its reasonable attorney fees in bringing this action.

### Count III: Attorney Fees under K.S.A. 40-908

44. Home City incorporates the allegations of the preceding paragraphs in this count.

45. The Policy insures Home City's losses by fire, tornado, lightning or hail.

46. Upon the Court entering judgment against Continental, Home City is entitled to its reasonable attorney fees as part of the costs of this action under K.S.A. 40-908.

Home City requests that the Court:

A. Enter judgment against Continental for damages for breach of its Policy obligations totaling $648,274.63;

B. Order Continental to pay Home City's attorney fees;

C. Order Continental to pay pre-judgment and post-judgment interest on Home City's damages; and

D. Order any other relief the Court deems just and appropriate.

Respectfully submitted,

 s/Jay F. Fowler
Jay F. Fowler, KS #10727
Samuel J. Walenz, KS #29114
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
T: 316-291-9788 | F: 316-267-6345
jfowler@foulston.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff Home City Grain makes this its demand for a trial by jury.

 s/Jay F. Fowler
Jay F. Fowler, KS #10727