IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HOME CITY GRAIN, INC.,

    *Plaintiff,*

v.

CONTINENTAL WESTERN INSURANCE
COMPANY,

    *Defendant.*

Case No. 23-1092-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendant Continental Western Insurance Company's Motion for Summary Judgment (Doc. 58), Motion to Exclude the Opinions of Plaintiff's Expert Dr. Patrick Clark (Doc. 56), and Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Brian Wullschleger (Doc. 57). Also before the Court is Plaintiff Home City Grain, Inc.'s Motion to Exclude Opinion Testimony of Dr. Kenneth Hellevang (Doc. 72). Defendants ask this Court to grant it summary judgment on the breach of contract claim, the promissory estoppel claim, and the claims for attorney's fees. Because genuine disputes of material fact exist, the Court denies Defendant's Motion for Summary Judgment. After Defendant filed its Motion for Summary Judgment, both parties filed several motions to exclude expert testimony. The Court will address these motions before proceeding to the factual background of the case.

## I.      Preliminary Matters

### A.      Motion to Exclude Opinion Testimony of Dr. Kenneth Hellevang

First, the Court will address Plaintiff's Motion to Exclude Opinion Testimony of Dr. Kenneth Hellevang (Doc. 72). Plaintiff argues that Dr. Hellevang's testimony is unreliable because it does not account for certain facts of the case. However, the parties stipulated to the admissibility of Dr. Hellevang's reports for the purposes of summary judgment in the Pretrial Order.[1] Because this case is now before the Court on summary judgment, the Court denies Plaintiff's Motion. Plaintiff may raise this issue again closer to trial.

### B.      Motion to Exclude the Opinions of Plaintiff's Expert Dr. Patrick Clark

Next, the Court will address Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Patrick Clark (Doc. 56). Defendant argues Dr. Clark's causation opinions lack the requisite reliability under Rule 702 and *Daubert*. However, the parties stipulated to the admissibility of Dr. Clark's reports for the purposes of summary judgment in the Pretrial Order.[2] Because this case is now before the Court on summary judgment, the Court denies Defendant's motion to exclude Dr. Clark's testimony. Defendant may raise this issue again closer to trial.

### C.      Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Brian Wullschleger

Finally, the Court will address Defendant's Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Brian Wullschleger (Doc. 57). Defendant moves to exclude Wullschleger's testimony, arguing that he is a fact witness and therefore cannot provide an expert opinion. The parties did not stipulate to the admissibility of Wullschleger's testimony. Because other genuine

---

[1] Pretrial Order (Doc. 55) at 3.

[2] Pretrial Order (Doc. 55) at 3.

issues of material fact preclude summary judgment, the Court need not address the merits of this motion to exclude for the purposes of this Order. Thus, the Court stays Defendant's motion to exclude Wullschleger's testimony and will address the merits of the motion closer to trial.

## II.  Factual and Procedural Background[3]

Plaintiff is a corporation that buys, stores, and sells grain. Defendant is an insurance company. This case arises from a dispute over whether damage to Plaintiff's store of corn was covered by the insurance policy issued by Defendant.

On April 1, 2021, Defendant issued policy number 3219011-22, a commercial general insurance policy, ("the Policy") to Plaintiff. The Policy was renewed on April 1, 2022. The Policy provides coverage for "direct physical loss" to stock which includes "grain, seed, and other agricultural products." Defendant is not responsible for paying for loss or damage if a policy exclusion applies. The Policy includes exclusions for (1) contamination or deterioration; (2) defects, errors, and omissions; (3) increased hazard; (4) neglect; (5) rain, snow, ice, or sleet; and (6) temperature and humidity.

On September 16, 2021, Plaintiff began accepting corn at its Wakefield property to fill the outdoor bunker. Once the bunker was filled with corn, it was covered with a tarp.

A weather event occurred on December 15, 2021 (the "December event") at the Wakefield property. During the December event, wind gusts and rain caused several rips in the tarp that covered the bunker of corn.

On December 16, 2021, a representative of Plaintiff spoke with Jeff Hanig, an adjuster for Defendant, to report the tarp damage. On December 28, 2021, Hanig visited the Wakefield

---

[3] The facts are uncontroverted by the parties unless otherwise noted.

property to inspect the bunker and take photos. He learned that Plaintiff made temporary repairs to the tarp covering the bunker. Plaintiff contends that Hanig promised that Defendant would mitigate any damage to the corn, if there was any loss, when the tarp was opened in the spring. Defendant contends that no such promise was made and that the parties mutually agreed to leave the corn in the bunker. After Hanig's visit, Defendant paid Plaintiff the actual cash value for a replacement tarp on January 26, 2022.

Another weather event occurred at the Wakefield property on April 29, 2022 (the "April event"). The April event also consisted of wind gusts and rain. Rain fell on the corn that was stored in the bunker when the wind removed the tarp from the bunker. The corn remained uncovered in the bunker from the April event until it was removed in May.

On May 9, 2022, Plaintiff started to move corn out of the bunker to fulfill the Flint Hills Grain, LLC ("Flint Hills") order. Plaintiff and Flint Hills contracted for Flint Hills to buy 200,000 bushels of corn from the bunker on December 17, 2021. According to the contract, Flint Hills would pick up 100,000 bushels between April 1, 2022, and April 30, 2022, and would pick up the remaining 100,000 bushels between May 1, 2022, and May 31, 2022.

While removing corn from the bunker, Plaintiff saw mold damage to the corn. Plaintiff contends that the damage to the corn was caused by the December event. Defendant contends that the damage to the corn was caused by the April event. On May 20, 2022, Plaintiff left a voicemail for Hanig to alert him about the damage. Wullschleger, Plaintiff's president, discussed the damaged corn with Hanig on May 24, 2022.

Plaintiff sought to recover the loss from the damaged corn under the Policy issued by Defendant. In Plaintiff's claim for coverage, it asserted that the damaged corn's loss occurred from the December event. On April 20, 2023, Defendant disclaimed coverage for the damaged corn.

Defendant found that the damage to the corn was not caused by the December event when it denied coverage.

On May 12, 2023, Plaintiff filed a complaint against Defendant alleging a breach of contract claim, a promissory estoppel claim, and claims for attorney's fees. Defendant filed a Motion for Summary Judgment on March 12, 2024. The matter is fully briefed and ripe for ruling.

### III.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[9]

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

### IV.     Analysis

### A.     Breach of Contract Claim

Defendant seeks summary judgment on the breach of contract claim, which involves interpretation of the Policy. "Under Kansas law, the interpretation and legal effect of an insurance contract is a matter of law to be determined by the court."[10] The insured has the burden to prove coverage under the policy.[11] The insurer has the burden to show that the loss is excluded by a specific policy provision.[12]

The terms of an insurance policy are to be construed according to the following rules of construction:

> The language of an insurance policy, like any other contract, must, if possible, be construed in such way as to give effect to the intention of the parties. In construing a policy of insurance, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished.
>
> Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. In such case there is no need for judicial interpretation or the application of rules of liberal construction. The court shall not make another contract for the parties and must enforce the contract as made.
>
> However, where the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail.

---

[10] *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1196 (D. Kan. 2020) (citing *Am. Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 658 P.2d 1015, 1018 (1983)) (further citations omitted).

[11] *Corp. Lakes Prop., LLC v. AmGuard Ins. Co.*, 649 F. Supp. 3d 1143, 1148 (D. Kan. 2023) (citing *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 29–30, 804 P.2d 1374, 1383 (1991)).

[12] *Id.*

To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.

Whether a written instrument is ambiguous is a question of law to be decided by the courts. Courts should not strain to create an ambiguity where, in common sense, there is not one. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.[13]

Defendant asserts three reasons why summary judgment should be granted in its favor: (1) Plaintiff fails to establish a direct physical loss to the corn, and thus, it is not covered under the Policy; (2) the damage to the corn was not caused by a covered event, and thus, is excluded under the Policy; and (3) Plaintiff's alleged damages are not amounts payable under the Policy. The Court will address each in turn.

    1.    *Direct physical loss*

Defendant argues that Plaintiff failed to prove that the damaged corn was a direct physical loss of the December event. The Policy provides coverage for "direct physical loss" to stock which includes "grain, seed, and other agricultural products." Whether a plaintiff sustained a direct physical loss is a question of coverage.[14] "The insured has the burden of proving that the loss is of the type included in the general provisions of coverage."[15] "The presence of the words 'direct' and 'physical' limit the word[ ] 'loss' . . . and unambiguously require that the loss be directly tied to a

---

[13] *Am. Fam. Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1058–59, 179 P.3d 1104, 1109–10 (2008) (citing *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575–76, 56 P.3d 789 (2002)).

[14] *See Promotional Headwear Int'l*, 504 F. Supp. 3d at 1197.

[15] *Id.*

material alteration to the property itself, or an intrusion onto the insured property."[16] There is not coverage when a plaintiff did not suffer any actual, tangible damage to the property.[17]

Here, Defendant claims that Plaintiff only saw damage to the corn after the April event. To support this assertion, Defendant relies on Dr. Hellevang's opinion that the events following the April event are the cause of the corn's damage. However, Plaintiff relies on Dr. Clark's opinion that the corn's damage was caused by the December event, not the April event. Whether the December event caused the damage to the corn, and thus, whether the Policy covered the damaged corn is material to the breach of contract claim. Therefore, a genuine issue of material fact exists as to which event actually caused the damage to the corn. Consequently, the Court denies Defendant's Motion as to this argument.

### 2. Policy Exclusions

Defendant also argues that the Policy's exclusions prevent Plaintiff's breach of contract claim because the exclusions precluded coverage. Defendant asserts that the following exclusions preclude coverage: (1) the contamination or deterioration exclusion; (2) the defects, errors, and omissions exclusion; (3) the increased hazard exclusion; (4) the neglect exclusion; (5) the rain, snow, ice, or sleet exclusion; and (6) the temperature and humidity exclusion.

Defendant asserts the fifth exclusion—for rain, snow, ice, or sleet—applies because the corn was stored in an outdoor temporary bunker covered by a tarp. Specifically, this exclusion exempts Defendant from paying for losses caused rain, snow, ice, or sleet when the crops are sheltered only by a temporary covering in the open. The parties dispute whether the bunker was a

---

[16] *Id.* at 1201–02 (citations omitted).

[17] *See Great Plains Ventures, Inc. v. Liberal Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978 (D. Kan. 2016).

temporary or permanent shelter. Defendant contends that the outdoor bunker was temporary. Plaintiff, however, contends that it made improvements and updates to the bunker before storing corn there, such that it created a permanent shelter. The status of the outdoor bunker—that is, whether it was temporary or permanent—materially impacts whether the rain, snow, ice, or sleet exclusion applies. Therefore, a genuine dispute of material fact exists. Accordingly, the Court denies Defendant's Motion as to the rain, snow, ice, or sleet exclusion.

As for the remaining Policy exclusions, the Court cannot adequately evaluate the parties' arguments without first answering the question of what caused the damage to the corn. As stated above, determining the cause of the corn's damage is a genuine dispute of material fact. Thus, the Court denies Defendant's Motion as to the remaining exclusion arguments.

### 3.   *Payable Policy Amounts*

Defendant asserts that summary judgment should be granted to it on the breach of contract claim because the Policy limits damages to benefits payable. The benefits payable under the Policy is determined in part by whether the damaged corn was covered under the Policy. Whether the damage to the corn is covered by the Policy are dependent on the actual cause of the corn's damage. As noted above, the cause of the corn's damage is a genuine dispute of material fact. Therefore, the Court denies Defendant's Motion as to the limited damages argument. Accordingly, the Court denies summary judgment as to the breach of contract claim.

### B.   **Promissory Estoppel**

Defendant seeks summary judgment on the promissory estoppel claim because the damage to the corn does not fall within the terms of the Policy. "Promissory estoppel is a doctrine by which courts view performance in reasonable reliance on a promise as sufficient to create a legally

binding contract where a contract otherwise lacks consideration."[18] The elements of a promissory estoppel claim include:

> [1] defendant made a promise, [2] the promise was made under circumstances where the promisor intended and reasonably expected the promise would be relied upon by the promisee, [3] the promisee acted reasonably in reliance on the promise, and [4] a refusal to enforce the promise would result in an injustice.[19]

Promissory estoppel claims are "designed to promote some measure of basic fairness when one party makes a representation or promise in a manner reasonably inducing another party to undertake some obligation or to incur some detriment as a result."[20] Detrimental reliance exists when the promise induced harm to the plaintiff.[21] "The party assuming the obligation or detriment may bring an action for relief should the party making the representation or promise fail to follow through."[22]

Here, the parties dispute whether Defendant ever assured Plaintiff after the December event that it would cover damage to the corn, if there was any, when the tarp covering the corn was opened in the spring. Plaintiff relies on its consultant Jim Seeberger's testimony that after the December event Hanig promised that Defendant would mitigate any damage to the corn, if there was any loss, when the tarp was opened in the spring. However, Defendant relies on Hanig's

---

[18] *Comeau v. Mt. Carmel Med. Ctr., Inc.*, 869 F. Supp. 858, 863 (D. Kan. 1994).

[19] *EDO Corp. v. Beech Aircraft Corp.*, 911 F. 2d 1447, 1454 (10th Cir. 1990) (citations omitted).

[20] *Peters v. Deseret Cattle Feeders, LLC*, 309 Kan. 462, 437 P.3d 976, 984 (2019) (quotations and citation omitted).

[21] *See id*.

[22] *Bouton v. Byers*, 50 Kan. App. 2d 34, 321 P.3d 780, 787 (2014). Based on the above quoted language, Defendant's argument that Plaintiff cannot assert promissory estoppel as an affirmative claim for relief is unfounded. Kansas law clearly allows a party to make an affirmative claim for relief under promissory estoppel. *Aero Tech Aviation Design, LLC v. Otto Aviation Grp., LLC*, 2017 WL 1397545, at *9 (D. Kan. Apr. 18, 2017); *Bouton*, 321 P.3d at 787. As such, the Court determines that Plaintiff can assert promissory estoppel as an affirmative claim for relief.

testimony that he did not promise to mitigate damage to the corn and that the parties mutually agreed to leave the corn in the bunker. Whether Hanig made a promise to cover any damage to the corn, and thus, whether there was a promise for Plaintiff to detrimentally rely upon is material to the promissory estoppel claim. Therefore, a material dispute of genuine fact exists as to whether Defendant promised to cover any loss to the corn after the December event. Accordingly, the Court denies Defendant's Motion as to the promissory estoppel claim.

### C.     Attorney's Fees

Defendant also seeks summary judgment on Plaintiff's claims for attorney's fees arguing that attorney's fees can only be recovered in conjunction with the claim for breach of contract. Defendant proffered this argument on the assumption that summary judgment would be granted to it on the breach of contract claim. However, the Court denied Defendant's Motion as to the breach of contract claim, and thus, the breach of contract claim remains in the case. As a result, the Court denies Defendant's Motion as to the claims for attorney's fees.

**IT IS THEREFORE ORDERED** that Defendant Continental Western Insurance Company's Motion for Summary Judgment (Doc. 58) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Home City Grain, Inc.'s Motion to Exclude Opinion Testimony of Dr. Kenneth Hellevang (Doc. 72) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Patrick Clark (Doc. 56) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Brian Wullschleger (Doc. 57) is **STAYED** until closer to trial.

**IT IS SO ORDERED.**

Dated this 1st day of August, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE